UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
 :
CENTRAL LABORERS' PENSION FUND :
and STEAMFITTERS LOCAL 449 PENSION :
FUND, derivatively on behalf of JPMorgan :
Chase & Co., :
 :
                Plaintiffs, :
 :
    v. :
 :
JAMES DIMON, LINDA B. BAMMANN, :
JAMES A. BELL, CRANDALL C. BOWLES, :
STEPHEN B. BURKE, JAMES S. CROWN, :
TIMOTHY P. FLYNN, LABAN P. :
JACKSON, MICHAEL A. NEAL, LEE R. :
RAYMOND, WILLIAM C. WELDON, :
WALTER V. SHIPLEY, and ROBERT I. :
LIPP, :
 :
                Defendants. :
 :
    -and- :
 :
JPMORGAN CHASE & CO., a Delaware :
corporation, :
 :
                Nominal Defendant. :
 :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: July 23, 2014

14 Civ. 1041 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

    Plaintiffs Central Laborers' Pension Fund and Steamfitters Local 449 Pension Fund ("Plaintiffs"), shareholders of JPMorgan Chase & Co. ("JPMorgan"), bring this derivative action for damages due to alleged breaches of fiduciary duty, violations of Section 14(a) of the Securities Exchange Act of 1934 (the "Securities Act"), abuse of control, corporate waste, and unjust enrichment by the thirteen individual named defendants (collectively, "Defendants"), some of whom are Board members. JPMorgan, a Delaware corporation, is named solely in its

1

derivative capacity. Plaintiffs seek damages suffered by JPMorgan as a result of its business relationship with Bernard L. Madoff Investment Securities LLC ("BMIS"), including JPMorgan's recent deferred prosecution agreement ("DPA") with the U.S. Attorney's Office for the Southern District of New York ("USAO"), in which JPMorgan agreed to pay the government $2.6 billion. Plaintiffs allege that no demand on JPMorgan's Board of Directors (the "Board") was necessary because such demand would be futile.

Defendants now move to dismiss because the Complaint fails to allege with particularity facts sufficient to excuse Plaintiffs' failure to make demand upon the Board prior to filing the derivative action. The Court agrees, and therefore GRANTS Defendants' motion to dismiss.

## BACKGROUND

The defendants are the Chief Executive Officer and Chairman of the Board James Dimon, ten current Board members,[1] and two former corporate officers/advisers Walter V. Shipley and Robert I. Lipp.[2] All of the directors other than the Chairman/CEO are non-management directors.

JPMorgan had a long standing banking relationship with Bernard Madoff ("Madoff") and BMIS. Since 1992, Madoff deposited almost all of the investment funds received through BMIS into accounts at Chase. Compl. ¶ 17. As we now know, those funds were not used to purchase stocks, options, or other securities for BMIS investors as Madoff had promised; rather, Madoff stole this money by perpetrating the largest Ponzi scheme in financial history. Plaintiffs allege that JPMorgan was well-positioned to identify Madoff's criminal activity because it had access

---

[1] Defendants Bammann, Bell, Bowles, Burke, Crown, Flynn, Jackson, Neal, Raymond, and Weldon currently serve as directors at JPMorgan.

[2] Defendant Shipley served as Chairman and CEO of JPMorgan's predecessors Chemical Bank (from 1981-1991 and from 1993-1996) and Chase Manhattan Bank (from 1996-1999). Defendant Lipp served as a director at JPMorgan (from 2003-2008) and as a senior advisor to JPMorgan (from 2005-2008).

to vast amounts of financial information about BMIS and routinely performed due diligence on BMIS's accounts. *Id.* ¶ 108. Rather than identifying and reporting Madoff's fraud, however, JPMorgan "turn[ed] a blind eye to Madoff's thievery." *Id.* ¶ 16. Specifically, Plaintiffs claim that Defendants Shipley and Lipp were repeatedly confronted with significant concerns about irregularities in BMIS's SEC filings, *id.* ¶¶ 3-12, but chose to ignore these red flags because they feared the loss of the lucrative accounts of BMIS and Norman Levy, a longtime customer of BMIS. *Id.* ¶¶ 10-12.

On January 6, 2014, JPMorgan entered into a DPA with the USAO regarding its relationship with Madoff. In the DPA, JPMorgan consented to the filing of a two-count Information charging it with violations of the Bank Secrecy Act ("BSA"), 31 U.S.C. § 5311 *et seq.*, for its failure to maintain an effective anti-money laundering program ("AML") and to file a suspicious activity report. *See* Declaration of David A. Rosenfeld in Opposition to Defendants' Motion to Dismiss ("Rosenfeld Decl."), ECF No. 25, Ex. 1, ¶ 1. JPMorgan also stipulated that the facts included in the DPA's Statement of Facts were true and accurate. *See id.*, Ex. 1, ¶ 2.[3] JPMorgan further agreed to pay $1.7 billion to the United States. *See id.*, Ex. 1, ¶ 7.

On February 19, 2014, Plaintiffs filed a shareholder derivative complaint, seeking damages as a result of JPMorgan's payment of $2.6 billion in penalties and settlements to federal authorities through the DPA and to civil plaintiffs concerning its conduct related to Madoff. Compl. ¶¶ 1, 352. Overall, Plaintiffs assert claims for (1) breach of fiduciary duty for failing to ensure that JPMorgan maintained an effective internal control structure or file a suspicious activity report, (2) violations of Section 14(a) of the Securities Act (solely against the Outside

---

[3] The Statement of Facts details the various tools JPMorgan had in place for identifying suspicious activity by its broker-dealer clients, Rosenfeld Decl., Ex. 1, Statement of Facts, ¶¶ 13-18, how those tools were used with respect to Madoff's investments, *id.*, Ex. 1, Statement of Facts, ¶¶ 19-21, and the numerous questions JPMorgan employees raised about Madoff's account during the due diligence process, *id.*, Ex. 1, Statement of Facts, ¶¶ 29-32, 37-63.

3

Directors) for failing to disclose information regarding Madoff's activity, (3) abuse of control, (4) corporate waste, and (5) unjust enrichment as a result of Defendants' salary, fees, stock options, and other payments received while breaching their fiduciary duties.

Plaintiffs have not made demand on the current Board because they allege that demand would be futile.

## DISCUSSION

### I.     Legal Standard

Federal Rule of Civil Procedure 23.1(b) requires that a shareholder bringing a derivative suit state with particularity plaintiff's efforts "to obtain the desired action from the directors or comparable authority" (*i.e.*, make demand) and "the reasons for not obtaining the action or not making the effort," (*i.e.*, futility). In determining whether demand is required or excused, the Court applies the substantive law of Delaware, JPMorgan's state of incorporation. *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 98-99 (1991).

Under Delaware law, the cause of action or claim belongs to the corporation. *See Cantor v. Sachs*, 162 A. 73, 76 (Del. Ch. 1932). A shareholder's right to "prosecute a derivative suit is limited to situations where the [shareholder] has demanded that the [nominal defendant's] directors pursue the corporate claim and they have wrongfully refused to do so or where demand is excused because the directors are incapable of making an impartial decision regarding such litigation." *Rales v. Blasband*, 634 A.2d 927, 932 (Del. 1993). "[T]he demand requirement . . . exists at the threshold, first to insure that a stockholder exhausts his intracorporate remedies, and then to provide a safeguard against strike suits," in "recognition of the fundamental precept that directors manage the business and affairs of corporations." *Aronson v. Lewis*, 473 A.2d 805, 811-12 (Del. 1984).

Plaintiffs must show the futility of making demand by adequately alleging that the directors were "incapable of making an impartial decision regarding the pursuit of the litigation." *Wood v. Baum*, 953 A.2d 136, 140 (Del. 2008). Where a board's oversight duties are challenged, plaintiff must plead particularized facts that "create a reasonable doubt that, as of the time the complaint [was] filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Rales*, 634 A.2d at 934. A plaintiff creates a reasonable doubt solely by demonstrating that a majority of the Board's members are interested. *See Rattner v. Bidzos*, No. Civ.A. 19700, 2003 WL 22284323, at *13 (Del. Ch. Oct. 7, 2003). "Vague or conclusory allegations do not suffice to challenge the presumption of a director's capacity to consider demand." *In re INFOUSA, Inc. S'holders Litig.*, 953 A.2d 963, 985 (Del. Ch. 2007).

## II.     Plaintiffs Are Not Excused from Making Demand on the Board

Plaintiffs allege that a majority of the current Board lacks sufficient independence to exercise business judgment. Specifically, the "Board currently consists of 11 members, of which seven were directors during the relevant period prior to the exposure of Madoff's fraud in December 2008." *Id.* ¶ 36. Specifically, Plaintiffs assert that the non-management directors (the "Outside Directors") are not independent because they (1) face a substantial likelihood of liability as a result of their failure to implement a reasonable anti-money laundering system or to provide information regarding Shipley and Lipp's involvement with Madoff to the USAO and (2) have a number of personal and professional conflicts. Plaintiffs are incorrect.

### A.     Substantial Likelihood of Liability

A reasonable doubt that a board could have exercised disinterested and independent business judgment in considering demand is established where a majority of the board of

directors faces a "substantial likelihood" of personal liability from the legal action. *Rales*, 634 A.2d at 936 (citing *Aronson,* 473 A.2d at 815). Plaintiffs fail to allege particularized facts demonstrating that the Outside Directors will likely face liability for their purported misconduct. The "mere threat" of personal liability is not enough to render a director interested, *id.*, and "[d]emand is not excused solely because the directors would be deciding to sue themselves," *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 121 (Del. Ch. 2009). To assess the Outside Directors' risk of personal liability, the Court must consider Plaintiff's underlying claims.

### 1. *Caremark* Claims

Plaintiffs' claim for breach of fiduciary duty is a *Caremark* claim, *i.e.*, failure to monitor. *Caremark* claims require proof that "(a) the directors utterly failed to implement any reporting or information system or controls; or (b) having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention." *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006); *see In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 970 (Del. Ch. 1996). According to Plaintiffs, "[u]nder *Stone*, Plaintiffs are required to plead that … [the Board] 'utterly failed' to attempt to assure *reasonable* AML controls were in place." Plaintiff's Opposition to Defendants' Motion to Dismiss ("Pl.'s Opp'n"), ECF No. 24, at 15 (emphasis added). But the "necessary conditions predicate for director oversight liability" is the "utter[] fail[ure] to implement *any* reporting information system or controls." *See Stone*, 911 A.2d at 370 (emphasis added).[4] That is not the case here. As the Statement of Facts explains, "[a]t all

---

[4] Plaintiffs rely on *Rich v. Chong*, 66 A.3d 963 (Del. Ch. 2013), to claim that a "woefully inadequate" system of internal controls is sufficient to establish a *Caremark* claim. *See* Pl.'s Opp'n. at 15-16. *Rich*, however, held that "a finding of liability is conditioned on a plaintiff's showing that the directors knew they were not fulfilling their

relevant times, [JPMorgan] designated an executive located in New York . . . as the head of [JPMorgan's] AML program[, which] included individuals based in the United States and other countries responsible for filing suspicious activity reports in the relevant jurisdictions." Rosenfeld Decl., Ex. A, Statement of Facts ¶ 6.  Since Plaintiffs claim that JPMorgan's controls were only inadequate, they cannot maintain a *Caremark* action.

Similarly, Plaintiffs do not allege with particularity that the Board "consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention."  *Stone*, 911 A.2d at 370.  Since JPMorgan's certificate of incorporation specifically immunizes its directors from personal liability for actions taken in good faith, Plaintiffs must plead particularized facts demonstrating that the Board acted with "scienter, *i.e.*, that there was an 'intentional dereliction of duty' or 'a conscious disregard' for their responsibilities, amounting to bad faith," *In re Goldman Sachs Grp. Inc. S'holder Litig.*, No. 5215-VCG, 2011 WL 4826104, at *12 (Del. Ch. Oct. 12, 2011).  Here, Plaintiffs point to a number of alleged red flags surrounding BMIS, *id.* ¶ 360, without showing that the Outside Directors had knowledge of these red flags.  Plaintiffs allege, for instance, that BMIS's Financial and Operational Combined Uniform Single Reports contained major discrepancies that were detected by JPMorgan employees.  *Id.* ¶¶ 5-8, 21, 162-90, 212-22.  But Plaintiffs do not allege that any of the Outside Directors were ever told about these discrepancies.  As a result, any alleged red flags are insufficient to demonstrate bad faith on the part of the Outside Directors and therefore cannot demonstrate a substantial likelihood of liability for the *Caremark* claims.

Plaintiffs also suggest that a majority of the Outside Directors breached their duty of loyalty by failing to disclose to the USAO that Defendants Shipley and Lipp met with Madoff

---

fiduciary duties," *Rich*, 66 A.3d at 981, and Plaintiffs have not alleged with particularity that the Board had scienter, *see infra*.

7

often to discuss their concerns about his account. Pl.'s Opp'n at 23; Compl. ¶ 364. Plaintiffs, however, fail to allege that any of the Outside Directors knew that these meetings took place. They merely claim that "JPMorgan conducted an internal investigation related to its relationship with Madoff and BMIS," Compl. ¶ 348, and ask the Court to then assume that the Outside Directors learned about Defendants Shipley and Lipp's meetings with Madoff through this investigation. Thus, Plaintiffs have not pled facts sufficient to show that any apparent omission from the DPA constitutes bad faith, and therefore have not demonstrated that Defendants face a substantial likelihood of liability for breach of fiduciary duty.[5]

### 2. Section 14(a) Claims

Plaintiffs also allege that the Outside Directors violated § 14(a) of the Securities Act. *Id.* ¶ 415 To state a Section 14(a) claim, a plaintiff "must show that (1) a proxy statement contained a material misrepresentation or omission, which (2) caused plaintiff's injury, and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *Bricklayers and Masons Local Union No. 5 Ohio Pension Fund v. Transocean Ltd.*, 866 F. Supp. 2d 223, 238 (S.D.N.Y. 2012) (internal quotations omitted). Here, Plaintiffs merely list facts that were not included in the proxy statements, rather than specifying any statements and explaining why those statements or omissions were fraudulent. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). Nor do Plaintiffs explain how these omissions caused the loss. The conclusory assertion that "JPMorgan was damaged as a result of the material misrepresentations and omissions in the Proxy Statements," Compl. ¶ 414, "is far too general and there is no essential

---

[5] Plaintiffs' argument that such an omission subjects the Outside Directors to criminal and civil liability, pursuant to the terms of the DPA, is meritless since they have not adequately alleged that the Outside Directors knew of the meetings.

link from the misstatements to the shareholder approval sought." *Police and Fire Retirement Sys. Of Detroit v. Safenet, Inc.*, 645 F. Supp. 2d 210, 239 (S.D.N.Y. 2009).  As a result, it is unlikely that any of the Outside Directors breached his or her fiduciary duty in connection with the alleged misrepresentations, and therefore demand cannot be excused on this basis.

### 3. Analysis of Remaining Claims

Plaintiffs' remaining claims for abuse of control, corporate waste, and unjust enrichment also fail.  First, demand cannot be excused on the basis of an abuse of control claim that is "premised on the same alleged breaches of fiduciary duty . . . which the Court has found fail to create a substantial likelihood for the Outside Directors so as to excuse demand." *Canty v. Day*, No. 13 Civ. 5629, 13 Civ. 5977, 2014 WL 1388676, at *12 (S.D.N.Y. Apr. 9, 2014).  Since the Court has found the fiduciary duty claims insufficient to excuse demand, Plaintiffs' abuse of control claims cannot prevail.  Furthermore, the corporate waste allegations are insufficient because they do not identify "an exchange that is so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration." *Glazer v. Zapata Corp.*, 658 A.2d 176, 183 (Del. Ch. 1993).  Lastly, the unjust enrichment claim fails because the "only enrichment alleged by plaintiffs consists of defendants' salaries, benefits, and unspecified bonuses." *In re Pfizer Inc. S'holder Derivative Litig.*, 722 F. Supp. 2d 453, 465 (S.D.N.Y. 2010).

Accordingly, the Court holds that there is not a "substantial likelihood" that any of the Outside Directors can be held liable, and therefore Plaintiffs fail to establish a reasonable doubt that the Board could have exercised disinterested and independent business judgment. *See Rales*, 634 A.2d at 936.

B.     **Conflicts of Interest**

Plaintiffs allege a number of conflicts of interest which they claim render the Board interested.  First, Plaintiffs claim that the Outside Directors are not disinterested because they will not take action against themselves or against Shipley and Lipp due to close personal relationships.  Compl. ¶¶ 362, 367, 372, 375.  But Plaintiffs offer no facts in support of this claim, and therefore cannot overcome the presumption of independence and proper exercise of business judgment.  *See In re Am. Int'l Grp., Inc. Derivative Litig.*, 700 F. Supp. 2d 419, 432-33 (S.D.N.Y. 2010) (rejecting the argument that demand is excused because directors "would have been forced to sue themselves, their fellow directors and their allies in the top ranks of the Company").  Nor does the Board's stock compensation raise a reasonable doubt that any of the Outside Directors are not independent, *see* Compl. ¶¶ 370-71, because "[i]t is well established that allegations that defendants are paid for their services as directors do not excuse demand." *La. Mun. Police Emps. Ret. Sys. v. Blankfein,* No. 08 Civ. 7605, 2009 WL 1422868, at *8 (S.D.N.Y. May 19, 2009) (internal quotations omitted).  Finally, Plaintiffs assert that demand is futile because, if the Outside Directors were to sue themselves, they would not be covered by Director and Officer Insurance.  Compl. ¶ 374.  Yet, "this argument has been rejected repeatedly under Delaware Law."  *Ferre v. McGrath*, No. 06 Civ. 1684 CM, 2007 WL 1180650, at *8 (S.D.N.Y. Feb. 16, 2007).  Since none of these alleged conflicts of interest create a reasonable doubt as to the Outside Directors' independence, demand is not excused.

## CONCLUSION

Accordingly, Plaintiff has failed to plead particularized facts that create a reasonable doubt that a majority of the Board could have exercised disinterested and independent business judgment in considering demand, and Plaintiff's failure to make demand is not excused. The Court therefore GRANTS Defendants' motion to dismiss the Complaint. The Clerk of Court is directed to enter judgment and close this case.

Dated: New York, New York
       July 23, 2014

SO ORDERED

*Paul Crotty*
PAUL A. CROTTY
United States District Judge