UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

CENTRAL LABORERS' PENSION FUND
and STEAMFITTERS LOCAL 449
PENSION FUND, derivatively on behalf of
JPMorgan Chase & Co.,

    Plaintiffs,

  v.

JAMES DIMON, LINDA B. BAMMANN,
JAMES A. BELL, CRANDALL C.
BOWLES, STEPHEN B. BURKE, JAMES S.
CROWN, TIMOTHY P. FLYNN, LABAN P.
JACKSON, MICHAEL A. NEAL, LEE R.
RAYMOND, WILLIAM C. WELDON,
WALTER V. SHIPLEY, and ROBERT I.
LIPP,

    Defendants.

  -and-

JPMORGAN CHASE & CO., a Delaware
corporation,

    Nominal Defendant.

------------------------------------------------------------X



14 Civ. 1041 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

  Plaintiffs move for reconsideration of the Court's Opinion and Order, *Central Laborers' Pension Fund v. Dimon*, 2014 WL 3639185 (S.D.N.Y. July 23, 2014) ("MTD Order"), dismissing their derivative action alleging, *inter alia*, breach of fiduciary duty with respect to JPMorgan's banking relationship with Bernard Madoff. The Court dismissed due to Plaintiffs' failure to make demand upon the Board prior to filing their derivative action. For the following reasons, the motion is denied.

1

## BACKGROUND

As explained more fully in the Court's prior decision, Plaintiffs have filed this derivative action for alleged breach of fiduciary duty, violations of Section 14(a) of the Securities Exchange Act, abuse of control, corporate waste, and unjust enrichment arising out of JPMorgan's banking relationship with Bernard Madoff, the ensuing Deferred Prosecution Agreement ("DPA") with the U.S. Attorney's Office ("USAO"), and the payment of $2.6 billion to federal authorities and civil plaintiffs. *See* Compl. Plaintiffs allege that JPMorgan, despite being in a position to notice the criminal activity, instead "turn[ed] a blind eye to Madoff's thievery." *Id.* ¶ 16. Plaintiffs claim that Defendants' actions were motivated by a fear of losing the lucrative accounts of Madoff and one of his longtime customers. *Id.* ¶¶ 10-12. Prior to filing their complaint, Plaintiffs did not make a pre-litigation demand on the Board, alleging demand futility. *Id.* ¶¶ 354-81.

In January 2014, JPMorgan entered into a DPA with the USAO in which it stipulated to the DPA's Statement of Facts regarding JPMorgan's tools for identifying suspicious activity by broker-dealer clients. Declaration of David A. Rosenfeld in Opposition to Defendants' Motion to Dismiss the Complaint for Failure to Make a Pre-Litigation Demand ("Rosenfeld Decl."), Ex. 1, ¶ 2. JPMorgan also consented to the filing of a criminal information which charged it with, *inter alia*, the failure to maintain an effective anti-money laundering program ("AML") and to file a suspicious activity report; JPMorgan also agreed to pay $1.7 billion in penalties. *Id.* at Ex. 1, ¶ 1, ¶ 3.

In April 2014, Defendants moved to dismiss Plaintiffs' Complaint for failure to make a pre-litigation demand on the board. (Dkt. 18). The Court granted this motion, finding that Plaintiffs had failed to plead particularized facts that create a reasonable doubt that a majority of

2

the Board could have exercised disinterested and independent business judgment in considering demand. Motion to Dismiss Order at 11.

## DISCUSSION

### I. Standard for Motion for Reconsideration

Reconsideration of a Court's prior decision is "limited" by the doctrine of the law of the case: "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, L.L.P.*, 322 F.3d 147, 167 (2d Cir. 2003) (internal quotation marks omitted). Accordingly, decisions should "not usually be changed unless there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." *Id.* (internal quotation marks omitted).

"It is not enough . . . that defendants could now make a more persuasive argument . . . . The law of the case will be disregarded only when the court has a clear conviction of error with respect to a point of law on which its previous decision was predicated." *Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir. 1981) (internal quotation marks and citation omitted). "Thus generally, there is a strong presumption against amendment of prior orders." *Bergerson v. N.Y. State Office of Mental Health*, 652 F.3d 277, 288 (2d Cir. 2011).

### II. Analysis

Plaintiffs do not allege any "intervening change in controlling law" or "availability of new evidence." Their assertion of a clear error in support of reconsideration is rejected.

Plaintiffs' motion is the exact danger against which case law warns—a reflexive motion made "to reargue those issues already considered when a party does not like the way the original

motion was resolved." *In re Optimal U.S. Litig.*, 813 F. Supp. 2d 383, 387 (S.D.N.Y. 2011) (internal quotation marks omitted). Both holdings of which Plaintiffs seek reconsideration were fully briefed by the parties and discussed by the Court in its original order, and accordingly there is no need for reconsideration.

### A. The Court applied the appropriate standard for a claim of oversight liability.

Plaintiffs argue that the Court misconstrued the requirements for a claim of director oversight liability under Delaware law. They posit that the correct standard is set forth in *Stone v. Ritter*: was there "an utter failure to attempt to assure a ***reasonable*** information and reporting system"? Plaintiffs' Memorandum of Law in Support of Their Motion for Reconsideration of the Court's Opinion and Order Dismissing the Complaint for Failure to Make a Pre-Litigation Demand and to Alter and Amend the Court's Judgment ("Pl. Mem."), at 3-6 (emphasis in original). The Court held that "the necessary condition[] predicate for director oversight liability" is whether the directors utterly failed "to implement *any* reporting or information system or controls." MTD Order at 6 (emphasis added) (quoting *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006)). This language, however, comes directly from *Stone*, which holds "that *Caremark* articulates the necessary conditions predicate for director oversight liability: (a) the directors utterly failed to implement any reporting or information system or controls; *or* (b) having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention." 911 A.2d at 370.

Plaintiffs contend that "reasonable" controls is the correct standard because *Stone* "articulates the standard as 'reasonable' controls **eight times** but articulates the standard as 'any' controls only ***once.***" Since "reasonable" is used more numerously, it must be controlling. Pl. Mem. at 4 (emphasis in original). Each of the references to "reasonable" controls, however, has

4

its origins in quotes of the *Caremark* decision in the *Stone* opinion. While *Stone* states that it is adopting a *Caremark* standard, the *Stone* Court clearly identifies its interpretation of *Caremark*'s requirements as the "utter fail[ure] to implement any reporting or information system or controls."

Moreover, Plaintiffs cite no case which refuses to follow *Stone*'s holding. Nor do Plaintiffs explain or distinguish cases which interpret *Stone* as the Court did in its Order. *See, e.g., In re Goldman Sachs Grp., Inc. Shareholder Litig.*, 2011 WL 4826104, at *19 (Del. Ch. Oct. 12, 2011) ("Plaintiffs must plead particularized facts suggesting that the board failed to implement a monitoring and reporting system or consciously disregarded the information provided by that system."). In fact, Plaintiffs rely on *Rich v. Chong*, which specifically states that "[o]ne way a plaintiff may successfully plead a *Caremark* claim is to plead facts showing that a corporation had no internal controls in place." 66 A.3d 963, 982-83 (Del. Ch. 2013). In *Rich*, the Court found that the company had controls which were not meaningful, and so went on to analyze the facts under the second element of *Stone*: whether directors consciously failed to monitor those controls. There is no clear error in the Court's interpretation and application of the appropriate *Stone* standard.

### B. Even if the standard required "reasonable controls," Plaintiffs have not alleged that JPMorgan's controls were not reasonable.

But even if the Court were to adopt Plaintiffs' argument about a "reasonable controls" standard, Plaintiffs have failed to allege that JPMorgan's controls were not reasonable. The Court's prior order referred to the DPA's Statement of Facts, which acknowledged that JPMorgan had "an executive located in New York . . . as the head of [the] AML program, . . . individuals based in the United States and other countries responsible for filing suspicious activity reports, . . . and a computerized system to comply with its AML obligations . . .

5

commonly used by large financial institutions to monitor account activity." Rosenfeld Decl., Ex. 1, Ex. C, ¶¶ 6, 13-63. Both parties recognize that there is a "vast difference between an inadequate or flawed effort to carry out fiduciary duties and a conscious disregard for those duties." *Lyondell Chem. Co. v. Ryan*, 970 A.2d 235, 243 (Del. 2009). The Court's Order stated that Plaintiffs had alleged that these systems were inadequate, not that they were unreasonable. In light of the controls that JPMorgan had in place, Plaintiffs' Complaint simply fails to allege that Defendants "utterly failed to attempt" to discharge their fiduciary duties.[1]

Plaintiffs' selective quotations from the DPA does not show that the Court committed clear error in determining that Plaintiffs failed to sufficiently allege their *Caremark* claim. The DPA discusses deficiencies in JPMorgan's AML controls, but does not provide sufficient allegations that these deficiencies rendered JPMorgan's controls unreasonable. Nor have the Plaintiffs sufficiently demonstrated how the information discussed in the DPA provides evidence of Defendants' conscious disregard of their duties. Accordingly, even under a "reasonable controls" standard, Plaintiffs have failed to allege the necessary predicates for a claim of director oversight liability.

### C. The Court did not misinterpret *Rich*.

Plaintiffs assert error in the Court's requirement that Plaintiffs allege with particularity that the Board "'consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention.'" MTD Order at 7 (quoting

---

[1] Plaintiffs also assert that the Court erred because it "did not reach the issue of whether the Director Defendants 'utterly failed to attempt to assure' AML controls—reasonable or otherwise." Reply Memorandum of Law in Further Support of Plaintiffs' Motion for Reconsideration of the Court's Opinion and Order Dismissing the Complaint for Failure to Make a Pre-Litigation Demand and to Alter and Amend the Court's Judgment ("Pl. Reply"), at 2. This is incorrect. As discussed above, the Court held that Plaintiffs alleged only that JPMorgan's controls were inadequate. MTD Order at 6-7.

*Stone*, 911 A.2d at 370). This is said to be a misinterpretation of *Rich v. Chong* and improperly requires Plaintiffs to plead scienter. Plaintiffs point to language in *Rich* which states, "Where directors fail to act in the face of a known duty to act, thereby demonstrating a conscious disregard for their responsibilities, they breach their duty of loyalty by failing to discharge their fiduciary obligation in good faith." Pl. Mem. at 8-9 (quoting *Rich*, 66 A.3d at 981). Plaintiffs fail to explain, however, how the Court's characterization of *Rich*, that "'a finding of liability is conditioned on a plaintiff's showing that the directors knew they were not fulfilling their fiduciary duties,'" misconstrues this language. Order at 6-7 n.4 (quoting *Rich*, 66 A.3d at 981). *Rich* mandates that Plaintiffs plead facts demonstrating directors' conscious disregard for their responsibilities. *Rich*, however, considered a motion to dismiss under the Rule 12(b)(6) standard, rather than the heightened pleading requirement of Rule 23.1 present here. In its prior Order, the Court assessed whether Plaintiffs had pled directors' knowledge, as mandated by *Rich*, with particularity, as mandated by Rule 23.1. This is not clear error.

Plaintiffs also argue that "[i]n attempting to distinguish *Rich*, the Court incorrectly focused on the second standard for pleading director oversight liability under Delaware law, which Plaintiffs were not pursuing." Pl. Mem. at 8. The Court referred to this standard after finding that Plaintiffs had failed *Stone*'s first requirement: that directors utterly failed to implement any reporting or information system or controls. But the Court's discussion of this standard was additional to its analysis under the first element of *Stone*, following the determination that Plaintiffs had not met *Stone*'s first requirement.

Finally, Plaintiffs allege that the Court erred "by deciding a disputed fact on a motion to dismiss: whether simply having certain AML employees constituted an attempt at reasonable AML controls in light of the size and complexity of JPMorgan versus the U.S. Attorney's

7

conclusion that JPMorgan, through the Director Defendants, willfully failed to maintain any of the elements of an adequate AML program as required by the BSA." Pl. Reply at 9-10.[2] This is incorrect and a mischaracterization of the findings of the DPA and Statement of Facts.[3] The Court determined that, for the reasons discussed above, Plaintiffs failed to plead with particularity that the controls in place were unreasonable. This is not a resolution of a factual dispute and in any event Plaintiffs have failed to demonstrate that this finding was clear error.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for reconsideration and their request to alter and amend the judgment is denied. The Clerk of the Court is directed to terminate the motion at Docket 29.

Dated: New York, New York
November 6, 2014

SO ORDERED

*[signature]*

PAUL A. CROTTY
United States District Judge

---

[2] Plaintiffs raise this argument for the first time in their reply papers. The practice of raising an issue for the first time in reply papers is disfavored. *See S.E.C. v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 168 (S.D.N.Y. 2014).
[3] The DPA does not determine that JPMorgan failed to maintain *any* of the elements of an adequate AML program, as demonstrated by the Statement of Facts' lengthy discussion of JPMorgan's AML systems and controls. Rosenfeld Decl., Ex. 1, Ex. C, ¶¶ 13-63.